## IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS

| | |
|---|---|
| Robert Wehrle and Heike Wehrle,   ) | |
|   ) | |
| Plaintiffs,   ) | |
|   ) | |
| v.   ) | Case No. |
|   ) | |
| Cincinnati Insurance Company,   ) | |
|   ) | |
| Defendant.   ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiffs, Robert and Heike Wehrle, by their attorneys, Foote, Meyers, Mielke and Flowers, LLC, and for their complaint for declaratory judgment against the Defendant, Cincinnati Insurance Company, state as follows:

## NATURE OF THE ACTION

1. This action arises in regard to a dispute concerning the amount of underinsured coverage available to the Plaintiffs' under a commercial liability policy issued by Defendant, Cincinnati Insurance Company ("Cincinnati").

2. The Plaintiffs, Robert and Heike Wehrle, suffered catastrophic injuries when their 2007 GMC Yukon was struck by a drunk driver on December 29, 2010 in unincorporated Kane County, Illinois.

3. The 2007 GMC Yukon was a covered auto under Cincinnati's commercial insurance policy #CPA0813936 (the "Cincinnati Policy", attached as "Exhibit A").

4. Each of the Plaintiffs is a covered "insured" under the Cincinnati Policy.

NOTICE

[illegible] YOUR THIS CASE IS HERE
SET FOR CASE MANAGEMENT CONFERENCE
BEFORE THE ABOVE NAMED JUDGE
ON _____ 4-19-12 _____
_____ AT 9:30 (A.M.) P.M
FAILURE TO APPEAR MAY RESULT IN THE
CASE BEING DISMISSED OR AN ORDER [illegible]
DEFAULT BEING ENTERED

1

5. The drunk driver responsible for the accident, Eric M. Barth, was insured by GEICO with limits of $100,000 per person with an aggregate of $300,000 per occurrence. GEICO has tendered it's per person limit of $100,000 to each of the Plaintiffs. Cincinnati has consented to the settlement with GEICO.

6. The business auto coverage under the Cincinnati Policy provides $1 million of underinsured motorist coverage.

7. There is no dispute between the parties that Robert Wehrle's individual claim exceeds $750,000 and that Heike Wehrle's individual claim exceeds $1.5 million.

8. On May 2, 2011, Plaintiffs' counsel made demand upon Cincinnati to tender the full $1 million of aggregate underinsured coverage.

9. Under Plaintiffs' interpretation of the policy, Heike Wehrle's underinsured claim against Cincinnatti (after the GEICO payment) would be $900,000 and Robert Wehrle's underinsured claim against Cincinnati (after the GEICO payment) would be $650,000. Due to the policy's $1 million 'per occurrence' aggregate coverage limitation, each of the Wehrle's claims would abate proportionately.

10. Cincinnati claims that it is entitled to reduce its $1 million 'per occurrence' aggregate coverage limitation by the $200,000 paid to the Plaintiffs by GEICO and has tendered $800,000 to the Plaintiffs ($320,000 to Robert Wehrle; and $480,000 to Heike Wehrle).

11. This court is vested with jurisdiction to resolve the actual controversy between the parties pursuant to 735 ILCS 5/2-701.

## THE PARTIES

12. Robert and Heike Wehrle are husband and wife, and residents of Hampshire, in Kane County, Illinois.

13. Cincinnati is an Ohio Corporation with its principal place of business located at 6200 S. Gilmore Road Fairfield, Ohio. Cincinnati does business in Kane County, Illinois.

## THE APPLICABLE INSURANCE POLICY TERMS

14. The Cincinnati Policy includes an Underinsured Endorsement referenced as Form AA 4045 IL 04 01 (the "Underinsured Endorsement", attached as "Exhibit A-1").

15. The declaration page of the Cincinnati Policy indicates a $1 million limit for its Underinsured Coverage as "The Most We Will Pay For Any One Accident or Loss" (see page 1, "Exhibit A").

16. Under Section B of the Underinsured Endorsement, Robert and Heike both separately qualify as "an insured". Under Section B(4), they each qualify as an insured for the direct bodily injuries they suffered as a result of the accident[1]; and under Section B(5), they each qualify as an insured for the loss of consortium due to injuries suffered by their spouse.[2]   (See pages 1-2 of Exhibit A-1).

17. Under Section A of the Underinsured Endorsement, "Coverage" is defined from the perspective of an individual insured's claim:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle.[3]

---

[1] Section B(4) reads: "Anyone for injuries incurred while 'occupying' a covered auto". See page 2 of the Underinsured Endorsement referenced as Exhibit A-1.

[2] Section B(5) reads: "Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured". See page 2 of the Underinsured Endorsement referenced as Exhibit A-1.

[3] See page 1 of the Underinsured Endorsement referenced as Exhibit A-1.

3

18. Cincinnati Policy's reference to "coverage", in the perspective of an individual insured's claim, is further bolstered by its definition of what constitutes an "underinsured motor vehicle":

> a 'motor vehicle' for which the sum of the limits of coverage available for payment to the "insured" under all liability bonds or policies covering person(s) or organization(s) liable to the "insured" at the time of an "accident" are less than the Limit of Insurance available for payment to the "insured" under this coverage.[4]

19. In the matter at hand, Cincinnati's definition of "coverage" as applied to the undisputed damages suffered by the Plaintiffs (and without reference to any aggregate "per occurrence" limitations), affords Robert Wehrle underinsured "coverage" in the amount $650,000.00; and affords Heike Wehrle underinsured "coverage" in the amount of $1.4 million.

20. Section D of the Underinsured Endorsement is titled "Limit of Insurance" and its interpretation is at the heart of the parties' controversy. Section D(1) provides limitations as to the most Cincinnati will pay in the aggregate in a single occurrence involving multiple claims. Sections D(2), D(3) and D(4) provide reductions as to what Cincinnati will pay in regard to the claim of an individual insured.

21. Section D(1) limits Cincinnati's aggregate "per occurrence" exposure to $1 million as set forth in the Declaration, regardless of the number of insureds who make a claim:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Underinsured Motorists Coverage shown in the Schedule or the Declarations.[5]

22. Section D(1) limits Cincinnati's total exposure by preventing a multiplication of its $1 million of coverage afforded on a 'per person' basis to an individual insured. Accordingly, in

---

[4] See page 4 of the Underinsured Endorsement referenced as Exhibit A-1.
[5] See page 2 of the Underinsured Endorsement referenced as Exhibit A-1.

multi-claim scenarios such as is presented in the instant case, Section D(1) limits Cincinnati's aggregate claim exposure to $1 million.

23. Absent from Section D(1), however, is any language that suggests that the aggregate "per occurrence" Limit of Insurance is reduced by the recovery obtained from the tortfeasor.

24. Under Section D(2) of the Underinsured Endorsement, Cincinnati's coverage for an individual insured's claim is reduced by the recovery that such insured makes against the tortfeasor:

> Except in the event of a "settlement agreement", the Limit of Insurance for this coverage shall be reduced by all sums paid or payable:
>
> a.   By or for anyone who is legally responsible, including all sums paid under this Coverage Part's Liability Coverage.[6]

25. The only reasonable interpretation of Section D(2) is that the reduction refers only to an individual insured's claim, and not, as Cincinnati contends, to reduce the aggregate amount of coverage available to all insureds.  Unlike Section D(1) which defines **its limitation** to apply to "the most we will pay for all damages resulting from any one 'accident'", the language of Section D(2) defines **its reduction** to apply to the "Limit of Insurance for this coverage".  As the term "coverage" is specifically defined in terms of the claim of a single "insured", **the reduction** language utilized in Section D(2) can only be applied as to the coverage afforded as to individual insured's claim.

26. Under Plaintiffs' interpretation, Heike Wehrle's  claim of $1.5 million would be reduced by Section D(2)'s individual claim limit to $900,000.00; while Robert Wehrle's claim of $750,000 would be reduced to $650,000.  As the sum of the claims after the Section D(2)

---

[6] See page 2 of the Underinsured Endorsement referenced as Exhibit A-1.

reductions total $1,550,000.00, the Wehrle's are also subject to Section D(1)'s aggregate 'per occurrence' limitation of $1 million dollars, and their claims will abate proportionately.

27. The Plaintiffs' interpretation is consistent with the language of Section D(3) which also references a reduction to the "maximum Limit of Insurance for this coverage" to equal "the amount by which the limit of insurance for this coverage exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle". As Cincinnati's definition of "underinsured motor vehicle" in Section F is defined in terms of the individual claim of an insured, the **coverage reducing language** of Section D(3), consistent with the **coverage reducing language** of Section D(2), cannot be used as a supplement to the "per occurrence" **limiting language** of Section D(1).

28. Under Cincinnati's interpretation of Section D(2), a reduction in Cincinnati's aggregate claim exposure occurs without reference to an individual insured's claim against the tortfeasor. Accordingly, Cincinnati insists that the separate payments by GEICO to Robert Wehrle of $100,000 and to Heike Wehrle in the amount of $100,000 reduce its exposure for the accident to $800,000.

29. Cincinnati's interpretation of Section D(2) does not comport with the language of its policy and would produce absurd results. Cincinnati would reduce the aggregate limit by "all sums payable by or for anyone who is legally responsible" regardless whether it's insured received the payment. In the matter at hand, there was a passenger in the drunk driver's car who also received $100,000 from GEICO. Employing Cincinnati's literal reading of Section D(2), its aggregate coverage would be further reduced to $700,000 due to the fact that $300,000 was paid out by the person who was legally responsible.

30. A further example illustrates the absurdity of Cincinnati's position. Assume that Robert Wehrle's claim was only $100,000 and that Heike Wehrle's claim remained at $1.5 million. Under Cincinnati's theory, Heike would only be entitled to collect $800,000 because her husband received $100,000 from the tortfeasor.

31. Cincinnati's position that the aggregate "per occurrence" Limit of Insurance is reduced to $800,000.00 is not supported by its policy language. Section D(1), which clearly sets the Limit of Insurance on an aggregate basis, does not reference that the aggregate limit would be reduced based upon the payments made on behalf of the tortfeasor. As "coverage" is defined on an individual "per insured" basis, the language which reduces "coverage" set forth in Section D(2), absent clear unequivocal language to the contrary, cannot be applied as a supplemental reduction of the "per occurrence" aggregate which is addressed in Section D(1). If in fact, Cincinnati intended Section D(2) to reduce the Limit of Insurance on an aggregate basis, the same language utilized in Section D(1) referencing "the most we will pay for all damages resulting from one "accident" could have been easily inserted.

32. A court's primary objective in construing an insurance contract is to ascertain and give effect to the intention of the parties as expressed in the agreement. If an insurance policy's terms are clear and unambiguous, they must be enforced as written unless doing so would violate public policy.

33. Plaintiffs desire a judicial determination of Cincinnati's coverage obligations, and a declaration that: (i) Cincinnati is obligated to pay, on an aggregate "per occurrence" basis, $1 million towards the plaintiffs' damages; (ii) Cincinnati may only setoff from each of its insured's claim the $100,000 they received from GEICO; and that (iii) in addition to the $800,000

previously paid by Cincinnati to the Plaintiffs, that Cincinnati be ordered to pay $200,000 to Heike Wehrle.

WHEREFORE, the Plaintiffs respectfully seek a judgment which provides:

A. A declaration that the Cincinnati Policy affords coverage on an aggregate basis in the amount of $1 million.

B. A declaration that the setoff available to Cincinnati for each of the Plaintiff's separate claims is limited to the $100,000 which they each received from GEICO.

C. A declaration that the total amount payable by Cincinnati to the Plaintiffs is $1 million.

D. Such other and further relief as the court may deem just and proper.

Respectfully Submitted:

_____
Craig Mielke, Attorney for Plaintiffs

Craig Mielke
FOOTE MEYERS MIELKE & FLOWERS
3 North Second St., Suite 300
St. Charles, Illinois 60174
Tel: (630) 232-6333
Fax: (630) 232-6597

# THE CINCINNATI INSURANCE COMPANY
## CINCINNATI, OHIO

### BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER: **CPA 081 39 36**          Effective Date: **08-01-2010**

Named Insured:   **IS THE SAME AS IT APPEARS ON THE COMMON POLICY DECLARATIONS**

**ITEM TWO**          **SCHEDULE OF COVERAGES AND COVERED AUTOS**
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $         Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $         Ded for each accident | |
| AUTO. MEDICAL PAYMENTS | 2 | $ 5,000 | INCL |
| UNINSURED MOTORISTS | 2,8,9 | $ 1,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2,8,9 | $ 1,000,000 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 2,8 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA218 Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $         Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 2,8 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA218 Ded for each covered auto. See Item Three for hired or borrowed "autos". | INCL |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $         for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:
| | | | | | | | |
|---|---|---|---|---|---|---|---|
| AA218 | 03/06 | AA101 | 03/06 | AA4136IL | 06/03 | AP401IL | 07/95 |
| CA0270 | 08/94 | CPA1314IL | 07/95 | AA4044IL | 04/01 | AA4045IL | 04/01 |
| AA265 | 04/09 | AA4047IL | 03/98 | AA261 | 03/06 | | |

* This policy may be subject to final audit



EXHIBIT A

Include                    surance
Servi                    ission.

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
## READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

**SECTION I - COVERED AUTOS**                                    Beginning on Page

Description of Covered Auto Designation Symbols .............................................1
Owned Autos You Acquire After the Policy Begins ...........................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos ...........................................................................2

**SECTION II - LIABILITY COVERAGE**

Coverage ...........................................................................................................2
Who is an Insured ...........................................................................................2
Coverage Extensions
    Supplementary Payments ............................................................................2
    Out of State .................................................................................................3
Exclusions ........................................................................................................3
Limit of Insurance ............................................................................................5

**SECTION III - PHYSICAL DAMAGE COVERAGE**

Coverage ...........................................................................................................7
Exclusions ........................................................................................................7
Limit of Insurance ............................................................................................8
Deductible ........................................................................................................8

**SECTION IV - BUSINESS AUTO CONDITIONS**

Loss Conditions
    Appraisal for Physical Damage Loss ..........................................................9
    Duties in the Event of Accident, Claim, Suit or Loss .................................9
    Legal Action Against Us ...............................................................................9
    Loss Payment - Physical Damage Coverages ............................................9
    Transfer of Rights of Recovery Against Others to Us ..............................10
General Conditions
    Bankruptcy ..................................................................................................10
    Concealment, Misrepresentation or Fraud ...............................................10
    Liberalization ..............................................................................................10
    No Benefit to Bailee - Physical Damage Coverages .................................10
    Other Insurance ..........................................................................................10
    Premium Audit .............................................................................................10
    Policy Period, Coverage Territory ..............................................................10
    Two or More Coverage Forms or Policies Issued by Us ...........................11

**SECTION V - DEFINITIONS** ..............................................................................11

**COMMON POLICY CONDITIONS**

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

Quote: 2044818      Version: 1      Policy: CPA 0813936      Effective Date: 08/01/2010      Rating State: IL

The Cincinnati Insurance Company

Automobile Schedule - Business Auto

Item Three

Attached to and forming a part of Policy Number CPA 0813936 , effective 08/01/2010

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

**POLICY LIMITS**

Liability: CSL 1,000,000

UM/UIM: 1,000,000

UMPD: N/A

Medical Payments: 5,000

1.000/1.000

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2007 GMC YUKON XL            VIN#: 204036 | | | | | C/N: 64,000   Terr: 134 | | | | | |
| | Class: 02199   OTC Comp Ded: 500 | | | Coll Ded: 500 | | ZipCode: 60140         Tax: 005187 | | | | | |
| | BI | PD | MP | OTC | COLL | UM | | | | | TOTAL |
| | 743 | Incl | 36 | 131 | 336 | 52 | | | | | 1,298 |
| 2 | 2007 GMC YUKON            VIN#: 249170 | | | | | C/N: 64,000   Terr: 134 | | | | | |
| | Class: 7391   OTC Comp Ded: 500 | | | Coll Ded: 500 | | ZipCode: 60140         Tax: 005187 | | | | | |
| | BI | PD | MP | OTC | COLL | UM | | | | | TOTAL |
| | 502 | Incl | 20 | 139 | 323 | 84 | | | | | 1,068 |
| | Business Auto Expanded Coverage (XC) | | | | | | | | | | |
| | Class: 9765 | | | | | Tax: 005187 | | | | | |
| | BI | PD | MP | OTC | COLL | UM | | | | | TOTAL |
| | N/A | N/A | N/A | 100 | N/A | N/A | | | | | 100 |
| | Hired and Non Owned | | | # of Employees: 5 | | | | | | | |
| | Class: 6601 | | | | | Tax: 005187 | | | | | |
| | BI | PD | MP | OTC | COLL | UM | | | | | TOTAL |
| | 32 | Incl | N/A | N/A | N/A | 26 | | | | | 58 |
| | BI | PD | MP | OTC | COLL | UM | | | | | TOTAL |
| Total | 1,277 | Incl | 56 | 370 | 659 | 162 | | | | | 2,524 |

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

| SYMBOL | DESCRIPTION |
|--------|-------------|

**1 =** ANY "AUTO".

**2 =** OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

**3 =** OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

**4 =** OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

**5 =** OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

**6 =** OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**7 =** SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

**8 =** HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**9 =** NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**B. Owned Autos You Acquire After the Policy Begins**

**1.** If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

**2.** But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

**a.** We already cover all "autos" that you own for that coverage or it replaces

an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** "Loss"; or

**e.** Destruction.

## SECTION II - LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who is an Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a cov-

ered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

quired because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement of Property by Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollutant**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, *seep*, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of *"mobile equipment"*.

However, this exception to Paragraph **a.** does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs **b.** and **c.** of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(1) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

(2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph **d.(1)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of *"mobile equipment"* or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. Limit of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## D. Mobile Equipment Subject to Motor Vehicle Insurance Laws

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE**, irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

# SECTION III - PHYSICAL DAMAGE COVERAGE

## A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs

incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

   We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

(2) Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown; or

**b.** Blowouts, punctures or other road damage to tires.

4. We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal for Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

3. **Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

4. **Loss Payment - Physical Damage Coverages**

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

5. **Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-

erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

B. **General Conditions**

1. **Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

2. **Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

3. **Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

a. The date we implemented the change in your state; or

b. The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

4. **No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

5. **Other Insurance**

   a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

      (1) Excess while it is connected to a motor vehicle you do not own.

      (2) Primary while it is connected to a covered "auto" you own.

   b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

   c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

   d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**

   a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

   b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **Policy Period, Coverage Territory**

   Under this Coverage Form, we cover "accidents" and "losses" occurring:

   a. During the Policy Period shown in the Declarations; and

   b. Within the coverage territory.

   The coverage territory is:

   a. The United States of America;

   b. The territories and possessions of the United States of America;

   c. Puerto Rico;

   d. Canada; and

   e. Anywhere in the world if:

      (1) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

      (2) The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

   We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **Two or More Coverage Forms or Policies Issued by Us**

   If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V - DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

1. A land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured";

(3) Being stored, disposed of, treated or processed in or upon the covered "auto"; or

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place

where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract":

   **1.** Means:

      **a.** A lease of premises;

      **b.** A sidetrack agreement;

      **c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

      **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

      **e.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

      **f.** That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

   **2.** Does not include that part of any contract or agreement:

      **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

      **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

      **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **2.** Vehicles maintained for use solely on or next to premises you own or rent;

   **3.** Vehicles that travel on crawler treads;

   **4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **a.** Power cranes, shovels, loaders, diggers or drills; or

      **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

   **5.** Vehicles not described in Paragraphs 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      **b.** Cherry pickers and similar devices used to raise or lower workers.

   **6.** Vehicles not described in Paragraphs 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      **a.** Equipment designed primarily for:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(1) Snow removal;

(2) Road maintenance, but not construction or resurfacing; or

(3) Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

1. The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

2. The "insured" uses, generates or produces the "pollutant".

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

2. A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

Q. "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

1. The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with

respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

ous properties" of "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

For a covered "auto" licensed or principally garaged in Illinois, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes in Liability Coverage**

1. Paragraph **A.1.b.(3)** of the **Who is an Insured** provision does not apply.

2. Our **Limit of Insurance** applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $20,000 for "bodily injury" to any one person caused by any one "accident", and

   b. $40,000 for "bodily injury" to two or more persons caused by any one "accident", and

   c. $15,000 for "property damage" caused by any one "accident".

   This provision will not change our total **Limit of Insurance.**

**B. Changes in Physical Damage Coverage**

The following is added to the **Limit of Insurance** provision with respect to repair or replacement resulting in better than like kind or quality and supercedes any provision to the contrary:

3. We may deduct for betterment if:

   a. The deductions reflect a measurable decrease in market value attributable to the poorer condition of, or prior damage to, the vehicle.

   b. The deductions are for prior wear and tear, missing parts and rust damages that is reflective of the general overall condition of the vehicle considering its age. In this event, deductions may not exceed $500.

**C. Changes in Conditions**

The **Other Insurance** condition is changed by the addition of the following:

Liability Coverage provided by this Coverage Form for any "auto" you do not own is primary if:

1. The "auto" is owned or held for sale or lease by a new or used vehicle dealership;

2. The "auto" is operated by an "insured" with the permission of the dealership described in Paragraph **1.** while your "auto" is being repaired or evaluated; and

3. The Limit of Insurance for Liability Coverage under this policy is at least:

   a. $100,000 for "bodily injury" to any one person caused by any one "accident",

   b. $300,000 for "bodily injury" to two or more persons caused by any one "accident", and

   c. $50,000 for "property damage" caused by any one "accident".

Includes copyrighted material of ISO Properties, Inc., with its permission.

## UNINSURED/UNDERINSURED MOTORISTS
## PROTECTION OPTION SELECTION FORM - ILLINOIS

The laws of Illinois require that automobile liability insurance policies offer Uninsured/Underinsured Motorists Coverage limits equal to the Bodily Injury Limits of the policy to which the coverage attaches. You may, however, select coverage at a lower limit.

**YOU ARE ELECTING TO PURCHASE UNINSURED MOTORISTS LIMITS LESS THAN YOUR BODILY IN-JURY LIABILITY LIMITS WHEN YOU SIGN THIS FORM.**

Uninsured Motorists Coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles because of bodily injury or death resulting therefrom.

Underinsured Motorists Coverage provides for payment of certain benefits for damages caused by owners or operators of underinsured motor vehicles because of bodily injury or death resulting therefrom.

An Underinsured motor vehicle is a vehicle to which a bodily injury policy or bond applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

Such benefits may include payments for certain medical expenses, lost wages and pain and suffering, subject to limitations and conditions in the policy.

Uninsured/Underinsured Motorist options are available for a modest premium: **PLEASE CONTACT YOUR AGENT** for the exact cost.

### PLEASE SELECT ONE OF THE FOLLOWING:

_____ I select Uninsured/Underinsured Motorists Coverage at the following limits which are lower than the Bodily Injury Liability Limits of my policy.

Thousand Dollars

| | Split Limit | | Single Limit |
|---|---|---|---|
| LIMITS OF LIABILITY | ☐ *20/40 | ☐ | 55 |
| | ☐ 25/50 | ☐ | 75 |
| | ☐ 50/100 | ☐ | 100 |
| | ☐ 100/300 | ☐ | 300 |
| | ☐ Other | ☐ | Other |

Attached to and forming a part of Policy Number **CPA 081 39 36** and any Renewal or Replacement thereof.

_____
DATE

_____
INSURED'S SIGNATURE

NOTE: **A.** *Underinsured Motorist Coverage does not apply unless Uninsured Motorist Coverage limits exceed the minimum Financial Responsibility Limits of $20,000 each person/$40,000 each occurrence or $55,000 Single Limit Liability.

**B.** Please refer to form CPA-1314 IL for information regarding "Uninsured Motorist Property Damage".

**AP 401 IL (7/95)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**a.** The first Named Insured shown in the Declarations may cancel this policy by mailing us advance written notice of cancellation.

**b.** When this policy is in effect 61 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons by mailing you written notice of cancellation stating the reasons for cancellation.

    **(1)** Nonpayment of premium.

    **(2)** The policy was obtained through a material misrepresentation.

    **(3)** Any "insured" has violated any of the terms and conditions of the policy.

    **(4)** The risk originally accepted has measurably increased.

    **(5)** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

    **(6)** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the Illinois insurance laws.

**c.** If we cancel for nonpayment of premium, we will mail you at least 10 days written notice.

**d.** If this policy is cancelled for other than nonpayment of premium and the policy is in effect:

    **(1)** 60 days or less, we will mail you at least 30 days written notice.

    **(2)** 61 days or more, we will mail you at least 60 days written notice.

**e.** If this policy in cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**f.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**g.** Our notice of cancellation will state the reason for cancellation.

**h.** A copy of the notice will also be sent to your agent or broker and the loss payee.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you, your agent or broker and the loss payee written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C.** **Mailing of Notices**

We will mail cancellation and nonrenewal notices to the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**CA 02 70 08 94**    Copyright, Insurance Services Office, Inc., 1994

## IMPORTANT NEW COVERAGE INFORMATION

We are required to offer a new coverage to our Illinois insureds for new policies and renewal policies effective January 1, 1985 or later. The law applies to policies that cover a motor vehicle used as a private passenger automobile or a motor home, mini-motor home, truck camper or van camper used for recreational purposes, designed for use on public highways and required to be registered in Illinois or is principally garaged in Illinois.

The new coverage is called Uninsured Motorist Property Damage. You may buy the coverage if your vehicle is not covered by collision insurance. Uninsured Motorist Property Damage coverage will pay for property damage to your motor vehicle caused by an uninsured motorist, subject to certain limitations.

You must be able to give the insurance company the name and address of the owner of the uninsured or hit-and-run motor vehicle or registration number and description of the vehicle. There must be physical contact between the uninsured or hit-and-run motor vehicle and your motor vehicle. No coverage will be provided for the loss of use of your motor vehicle or for loss or damage to personal property located in your motor vehicle.

The amount of coverage provided by Uninsured Motorist Property Damage coverage will be the actual cash value of the motor vehicle described on the policy or $15,000, whichever is less, subject to a $250 deductible. You must pay a premium for each motor vehicle you want covered by Uninsured Motorist Property Damage.

IF YOU WOULD LIKE MORE INFORMATION ON THIS COVERAGE OR WANT TO ADD IT TO YOUR POL-ICY, CONTACT YOUR AGENT.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNINSURED MOTORISTS COVERAGE

Throughout this Coverage Part "you" and "your" refer to the organizations and natural persons shown as a Named Insured in the Declarations of this Coverage Part. "You" and "your" do not refer to any other persons or organizations, including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named insured in the Declarations of this Coverage Part.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Part apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the Coverage Part unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 08-01-2010 | CPA 081 39 36 |
| Named Insured: | |
| RTW FOX VALLEY LLC, EVENTS OF ELEGANCE, RTW MANAGEMENT INC | |
| Countersigned by: | |

(Authorized Representative)

### SCHEDULE

| Limit of Insurance | |
|---|---|
| $ | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered "auto" is principally garaged, we will pay only after all liability bonds or policies have been partially or fully exhausted by payment of judgments or settlements.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

## B. Who is an Insured

**The following are insureds:**

1. You are an "insured". However, if you are not a natural person, you are an "insured" only for purposes of selecting limits of Uninsured Motorists Coverage or executing a rejection of Uninsured Motorists Coverage.

2. "Family members" of natural persons shown as a Named Insured in the Declarations of this Coverage Part.

3. Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for

the Named Insured shown in the Declarations of this Coverage Part.

4. Anyone for injuries incurred while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

5. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any personal injury protection, workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Part;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Part; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Part or policy.

4. Any person while operating or occupying a motor vehicle without reasonable belief that he or she is entitled to do so.

5. Punitive or exemplary damages.

## D. Limit of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Uninsured Motorists Insurance shown in the Schedule or the Declarations.

   We will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $20,000 for "bodily injury" to any one person caused by any one "accident", and

   b. $40,000 for "bodily injury" to two or more persons caused by any one "accident".

   This provision will not change our total limit of liability.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Part and any Liability Coverage Part, Medical Payments Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this Coverage Part for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any personal injury protection, workers' compensation, disability benefits or similar law.

## E. Changes in Conditions

The **Conditions** are changed for Uninsured Motorists Insurance Coverage as follows:

1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary and Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance. We will pay only the amount by which the limit of liability for this Coverage exceeds the limit of liability of such other coverage.

   c. If the coverage under this Coverage Part is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance

providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

   (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2.** **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   **a.** You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved;

   **b.** You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

   **c.** You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

**3.** Transfer of Rights of Recovery Against Others to Us does not apply.

**4.** The following **Conditions** are added:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**ARBITRATION**

**A.** If we and an "insured" do not agree:

   **1.** Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

   **2.** As to the amount of damages that are recovered;

the matter may be settled by arbitration. If the "insured" requests, we and the "insured" will each select an arbitrator.

The two arbitrators will select a third. If the arbitrators are not selected within 45 days of the insured's request for arbitration, either party may request that that

arbitration be submitted to the American Arbitration Association. Each party will:

   **1.** Pay the expenses it incurs; and

   **2.** Bear the expenses of the third arbitrator equally.

**B.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives.

**C.** If arbitration is submitted to the American Arbitration Association, then the American Arbitration Association rules shall apply to all matters except medical opinions. As to medical opinions, if the amount of damages being sought:

   **1.** Is equal to or less than the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then the American Arbitration Association rules shall apply.

   **2.** Exceeds the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then the rules of evidence that apply in the circuit court for placing medical opinions into evidence shall apply.

In all other arbitration proceedings, local rules of law as to arbitration procedure and evidence will apply.

**D.** A decision agreed to by two of the arbitrators will be binding as to:

   **1.** Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

   **2.** The amount of damages not exceeding the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law.

**F.** **Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured in the Declarations of this Coverage Part. Such relation may be by blood, marriage or adoption and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor

home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Uninsured motor vehicle" means a "motor vehicle":

   a. For which no liability bond or policy applies at the time of an "accident".

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent.

   c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto" or a vehicle an "insured" is "occupying". If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

However, "uninsured motor vehicle" does not include any "motor vehicle":

   a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

   b. Owned by a governmental unit or agency.

   c. Designed for use mainly off public roads while not on public roads.

   d. Owned by or furnished or available for the regular use of any "insured", other than the named insured or a "family member" of a named insured.

   e. For which liability coverage is afforded under this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNDERINSURED MOTORISTS COVERAGE

Throughout this Coverage Part "you" and "your" refer to the organizations and natural persons shown as a Named Insured in the Declarations of this Coverage Part. "You" and "your" do not refer to any other persons or organizations, including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured in the Declarations of this Coverage Part.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Part apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the Coverage Part unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| **08-01-2010** | **CPA 081 39 36** |
| Named Insured: | |
| **RTW FOX VALLEY LLC, EVENTS OF ELEGANCE, RTW MANAGEMENT INC** | |
| Countersigned by: | |

(Authorized Representative)

### SCHEDULE

| **Limit of Liability** |
|---|
| $                                        Each Accident |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle".

2. We will pay only after all liability bonds or policies have been partially or fully exhausted by judgments or payments, unless:

a. We have been given prompt written notice of a "tentative settlement" and decide to advance payment to the "insured" in an amount equal to that "tentative settlement" within 30 days after receipt of notification; or

b. We and an "insured" have reached a "settlement agreement".

3. Any judgment for damages arising out of a "suit" brought without written notice to us is not binding on us.

**B. Who is an Insured**

**The following are insureds:**

1. You are an "insured". However, if you are not a natural person, you are an "insured" only for purposes of selecting limits of Underinsured Motorists Coverage or execut-

EXHIBIT A-1

AA 4045 IL 04 01                                                                                              Page 1 of 4

ing a rejection of Underinsured Motorists Coverage.

2. "Family members" of natural persons shown as a Named Insured in the Declarations of this Coverage Part.

3. Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for the Named Insured shown in the Declarations of this Coverage Part.

4. Anyone for injuries incurred while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

5. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer under any personal injury protection, workers' compensation, disability benefits or similar law.

3. "Bodily Injury" sustained by:

   a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Part;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Part or policy.

4. Any person while operating or occupying a "motor vehicle" without reasonable belief that he or she is entitled to do so.

5. Punitive or exemplary damages.

## D. Limit of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident",

the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Underinsured Motorists Coverage shown in the Schedule or the Declarations.

2. Except in the event of a "settlement agreement", the Limit of Insurance for this coverage shall be reduced by all sums paid or payable:

   a. By or for anyone who is legally responsible, including all sums paid under this Coverage Part's Liability Coverage.

   b. Under any personal injury protection, workers' compensation, disability benefits or similar law.

   c. Under any automobile medical payments coverage. However, the Limit of Insurance for this coverage shall not be reduced by any sums paid or payable under Social Security disability benefits.

3. In the event of a "settlement agreement", the maximum Limit of Insurance for this coverage shall be the amount by which the limit of insurance for this coverage exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

4. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Part and any Liability Coverage Part.

## E. Changes in Conditions

The **Conditions** are changed for Underinsured Motorists Coverage as follows:

1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary and Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorists insurance. We will pay only the amount by which the

limit of liability for the Coverage exceeds the limit of liability of such other insurance.

c. If the coverage under this Coverage Part is provided:

   (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

   (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   a. Give us written notice of a "tentative settlement" and allow us 30 days to advance payment in an amount equal to that settlement within 30 days after receipt of notification to preserve our rights against the owner or operator of the "underinsured motor vehicle";

   b. File "suit" against the owner or operator of the "underinsured motor vehicle" prior to the conclusion of a "settlement agreement". Such "suit" cannot be abandoned or settled without giving us written notice of a "tentative settlement" and allowing us 30 days to advance payment in an amount equal to that settlement to preserve our rights against the owner or operator of the "underinsured motor vehicle"; .

   c. You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved; and

   d. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought.

   e. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

3. The following is added to **Transfer of Rights of Recovery Against Others to Us:**

   **Transfer of Rights of Recovery Against Others to Us** does not apply to damages caused by an "accident" with an "underinsured motor vehicle" if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s); and

   b. Fail to advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of the notice.

   If we advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of notice:

   a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage, and

   b. We will also have a right to recover the advanced payment.

   However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

4. The following **Conditions** are added:

   **REIMBURSEMENT AND TRUST**

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

   **ARBITRATION**

   a. If we and an "insured" do not agree:

      1. Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

      2. As to the amount of damages that may be recovered ;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

The "insured" and we, however, must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court of competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 45 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction.

Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be bindings to:

1. Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

2. The amount of damages.

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured in the Declarations of this Coverage Part. Such relation may be by blood, marriage or adoption, and may include a ward or foster child.

2. "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not sta-

tionary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Settlement agreement" means we and an "insured" agree that the "insured" is legally entitled to recover, from the owner or operator of the "underinsured motor vehicle", damages for "bodily injury" and, without arbitration, agree also as to the amount of damages. Such agreement is final and binding regardless of any subsequent judgment or settlement reached by the "insured" with the owner or operator of the "underinsured motor vehicle".

5. "Tentative settlement" means an offer from the owner or operator of the "underinsured motor vehicle" to compensate an "insured" for damages incurred because of "bodily injury" sustained in an accident involving an "underinsured motor vehicle".

6. "Underinsured motor vehicle" means a "motor vehicle" for which the sum of the limits of coverage available for payment to the "insured" under all liability bonds or policies covering person(s) or organization(s) liable to the "insured" at the time of an "accident" are less than the Limit of Insurance available for payment to the "insured" under this coverage. However, "underinsured motor vehicle" does not include any vehicle:

a. Owned or operated by any self-insurer under any applicable motor vehicle law.

b. Owned by a governmental unit or agency.

c. Designed for use mainly off public roads while not on public roads.

d. Which is an "uninsured motor vehicle".

e. Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPlus
# BUSINESS AUTO EXPANDED COVERAGE (XC®) ENDORSEMENT

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Who is an Insured - Amended**

**SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured** is amended by adding the following:

The following are "insureds":

1. Any subsidiary which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this coverage form.

   However, the insurance afforded by this provision does not apply to any subsidiary that is an "insured" under any other automobile liability policy, or would be an "insured" under such policy but for termination of such policy or the exhaustion of such policy's limits of insurance.

2. Any organization that is newly acquired or formed by you and over which you maintain majority ownership.

   The insurance provided by this provision:

   a. Is effective on the date of acquisition or formation, and is afforded for 180 days after such date;

   b. Does not apply to "bodily injury" or "property damage" resulting from an "accident" that occurred before you acquired or formed the organization;

   c. Does not apply to any newly acquired or formed organization that is a joint venture or partnership; and

   d. Does not apply to an insured under any other automobile liability policy, or would be an insured under such a policy but for the termination of such policy or the exhaustion of such policy's limits of insurance.

3. Any of your "employees" while using a covered "auto" in your business or your personal affairs, provided you do not own, hire or borrow that "auto".

**B. Liability Coverage Extensions - Supplementary Payments - Higher Limits**

**SECTION II - LIABILITY COVERAGE, A. Coverage, 2. Coverage Extensions, a. Supplementary Payments** is amended by:

1. Replacing the $2,000 Limit of Insurance for bail bonds with $4,000 in **(2)**; and

2. Replacing the $250 Limit of Insurance for reasonable expenses with $500 in **(4)**.

**C. Amended Fellow Employee Exclusion**

**SECTION II - LIABILITY COVERAGE, B. Exclusions, 5. Fellow Employee** is amended by adding the following:

But this exclusion does not apply if the "bodily injury" results from the use of a covered "auto" you own or hire. Coverage is excess over any other collectible insurance.

**D. Hired Auto - Physical Damage**

If hired "autos" are covered "autos" for Liability Coverage, then Comprehensive and Collision Physical Damage Coverages as provided under **SECTION III - PHYSICAL DAMAGE COVERAGE** of this Coverage Part are extended to "autos" you hire of the private passenger type or light truck (10,000 pounds or less gross vehicle weight) type, subject to the following:

1. The most we will pay for "loss" to any hired "auto" is $35,000 or the actual cash value or cost to repair or replace, whichever is the least, minus a deductible.

2. The deductible will be equal to the largest deductible applicable to any owned "auto" of the private passenger type or light truck type for that coverage, or $1,000, whichever is less.

Includes copyrighted material of ISO Properties, Inc., with its permission.

3. Hired Auto - Physical Damage coverage is excess over any other collectible insurance.

4. Subject to the above limit, deductible, and excess provisions we will provide coverage equal to the broadest coverage applicable to any covered "auto" you own of the private passenger type or light truck type insured under this policy.

Coverage includes loss of use of that hired auto, provided it results from an "accident" for which you are legally liable and as a result of which a monetary loss is sustained by the leasing or rental concern. The most we will pay for any one "accident" is $1,000.

If a limit for Hired Auto - Physical Damage is shown in the Schedule, then that limit replaces, and is not added to, the $35,000 limit indicated above.

**E. Rental Reimbursement**

   **SECTION III - PHYSICAL DAMAGE** is amended by adding the following:

1. We will pay for rental reimbursement expenses incurred by you for the rental of a private passenger type "auto" because of a "loss" to a covered private passenger type "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered private passenger type "auto". No deductible applies to this coverage.

2. We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

   a. The number of days reasonably required to repair the covered private passenger type "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered private passenger type "auto" and return it to you; or

   b. 30 days.

3. Our payment is limited to the lesser of the following amounts:

   a. Necessary and actual expenses incurred; or

   b. $40 per day.

4. This coverage does not apply while there are spare or reserve private passenger

type "autos" available to you for your operations.

5. We will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions.**

**F. Transportation Expense - Higher Limits**

   **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions** is amended by replacing $20 per day with $50 per day, and $600 maximum with $1,500 maximum in **Extension a. Transportation Expenses.**

**G. Airbag Coverage**

   **SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 3.a.** is amended by adding the following:

   However, the mechanical and electrical breakdown portion of this exclusion does not apply to the accidental discharge of an airbag. This coverage for airbags is excess over any other collectible insurance or warranty.

**H. Loan or Lease Gap Coverage**

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limit of Insurance** is deleted in its entirety and replaced by the following, but only for private passenger type "autos" with an original loan or lease, and only in the event of a "total loss" to such a private passenger type "auto":

   a. The most we will pay for "loss" in any one "accident" is the greater of:

      (1) The amount due under the terms of the lease or loan to which your covered private passenger type "auto" is subject, but will not include:

         (a) Overdue lease or loan payments;

         (b) Financial penalties imposed under the lease due to high mileage, excessive use or abnormal wear and tear;

         (c) Security deposits not refunded by the lessor;

         (d) Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

(e) Carry-over balances from previous loans or leases, or

(2) Actual cash value of the stolen or damaged property.

**b.** An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of "loss".

**2.** **SECTION V - DEFINITIONS** is amended by adding the following, but only for the purposes of this **Loan or Lease Gap Coverage:**

"Total loss" means a "loss" in which the cost of repairs plus the salvage value exceeds the actual cash value.

**I.** **Glass Repair - Waiver of Deductible**

**SECTION III - PHYSICAL DAMAGE COVERAGE, D. Deductible** is amended by adding the following:

No deductible applies to glass damage if the glass is repaired in a manner acceptable to us rather than replaced.

**J.** **Duties in the Event of an Accident, Claim, Suit or Loss - Amended**

**SECTION IV - BUSINESS AUTO CONDITIONS, A. Loss Conditions, 2. Duties in the Event of Accident, Claim, Suit or Loss, a.** is amended by adding the following:

This condition applies only when the "accident" or "loss" is known to:

**1.** You, if you are an individual;

**2.** A partner, if you are a partnership;

**3.** An executive officer or insurance manager, if you are a corporation; or

**4.** A member or manager, if you are a limited liability company.

**K.** **Unintentional Failure to Disclose Hazards**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** is amended by adding the following:

If you unintentionally fail to disclose any hazards existing on the effective date of this Coverage Form, we will not deny coverage under this Coverage Form because of such failure.

**L.** **Mental Anguish Resulting from Bodily Injury**

**SECTION V - DEFINITIONS, C. "Bodily injury"** is deleted in its entirety and replaced by the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish and death sustained by the same person that results from such bodily injury, sickness or disease. "Bodily injury" does not include mental anguish or death that does not result from bodily injury, sickness or disease.

Includes copyrighted material of ISO Properties, Inc., with its permission.

# IMPORTANT NOTICE TO ILLINOIS INSUREDS

## DEFENSIVE DRIVING COURSE DISCOUNT
## FOR SENIOR CITIZENS

In accordance with Illinois law, the Secretary of State will provide documentation to those people over age 55 who have successfully completed a defensive driving course. A discount of 5% will apply to the premiums for Bodily Injury Liability, Property Damage Liability, Medical Payments, and Collision coverages of the vehicle principally operated by any senior citizen who presents such documentation.

AA 4047 IL 03 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

Throughout this Coverage Form "you" and "your" refer to the organization and any specifically named natural persons shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations. "You" and "Your" do not refer to any other persons or organizations, including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations.

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who is an Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. "Family members" of natural persons shown as Named Insureds in the Business Auto or Garage Coverage Part Declarations while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone for injuries while "occupying" a covered "auto".

4. Anyone for injuries while "occupying" a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto")

owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while

the "auto" is being prepared for such a contest or activity.

## D. Limit of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

## E. Changes in Conditions

The Conditions are changed for **Auto Medical Payments Coverage** as follows:

1. The **Transfer of Rights of Recovery Against Others to Us** Condition does not apply.

2. The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance - Primary and Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# THE CINCINNATI INSURANCE COMPANY
### P.O. BOX 145496, CINCINNATI, OHIO 45250-5496
### 513-870-2000
A STOCK INSURANCE COMPANY

## AUTOMOBILE / GARAGE
## RENEWAL CERTIFICATE

### ATTACH THIS CERTIFICATE TO YOUR POLICY

| POLICY NUMBER | RENEWAL DATE | EXPIRATION DATE |
|---|---|---|
| CPA 081 39 36 | 08-01-2010 | 08-01-2011 |

NAMED INSURED
**RTW FOX VALLEY LLC, EVENTS OF ELEGANCE,**
**RTW MANAGEMENT INC**
**2500 N RIVER ROAD**
**N AURORA IL  60542**

AGENCY
**LUNDSTROM INSURANCE 12-141**
**ELGIN IL**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY UNLESS OTHERWISE SPECIFIED, THE ABOVE NUMBERED POLICY IS RENEWED FOR THE TERM SHOWN ABOVE.

### COVERAGE PROVIDED

AUTOMOBILE - SEE SCHEDULE

PREMIUM
$ REFER TO IA102

FORMS APPLICABLE AT RENEWAL
**IA102    09/08    AA501    03/06    IA501    05/06**

TAX ID# 005187
NB1 BSO
07-20-2010

Countersigned _____ By _____
                              (Date)                                    (Authorized Representative)

**AGENT'S COPY**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Attached to POLICY
NUMBER  **CPP 081 39 36/CPA 081 39 36**

# SUMMARY OF PREMIUMS CHARGED

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part | $ 4,610 |
| Commercial General Liability Coverage Part | $ 1,998 |
| Commercial Umbrella / Excess Liability Coverage Part | $ 3,750 |
| **CRIME AND FIDELITY COVERAGE PART** | $ 250 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Installment Charge | $ 20 |
| Sub-Total | $ 10,628 |
| | |
| Commercial Auto Coverage Part | $ 2,524 |
| Auto Installment Charge | $ INCL |
| | |
| Terrorism Coverage | $ 73 |
| Annual Total | $ 13,225 |

**PAYMENTS**

| | All Other | + | Auto | = | Total Installment | |
|---|---|---|---|---|---|---|
| | First Installment | Remaining Installment | First Installment | Remaining Installment | First Installment | Remaining Installment |
| **QUARTERLY** | $ 2,675 | $ 2,675 | + $ 631 | $ 631 | = $ 3,306 | $ 3,306 |

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 09 08

# THE CINCINNATI INSURANCE COMPANY

## CINCINNATI, OHIO

### BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER: **CPA 081 39 36**          Effective Date: **08-01-2010**

Named Insured:  **IS THE SAME AS IT APPEARS ON THE COMMON POLICY DECLARATIONS**

**ITEM TWO**          SCHEDULE OF COVERAGES AND COVERED AUTOS
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $ 1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $        Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $        Ded for each accident | |
| AUTO. MEDICAL PAYMENTS | 2 | $ 5,000 | INCL |
| UNINSURED MOTORISTS | 2,8,9 | $ 1,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2,8,9 | $ 1,000,000 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 2,8 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA218 Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $        Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 2,8 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA218 Ded for each covered auto. See Item Three for hired or borrowed "autos". | INCL |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $        for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| AA218 | 03/06 | AA101 | 03/06 | AA4136IL | 06/03 | AP401IL | 07/95 |
| CA0270 | 08/94 | CPA1314IL | 07/95 | AA4044IL | 04/01 | AA4045IL | 04/01 |
| AA265 | 04/09 | AA4047IL | 03/98 | AA261 | 03/06 | | |

\* This policy may be subject to final audit

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
### READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

**SECTION I - COVERED AUTOS**          **Beginning on Page**

Description of Covered Auto Designation Symbols ................................................1
Owned Autos You Acquire After the Policy Begins ...............................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos ..................................................2

**SECTION II - LIABILITY COVERAGE**

Coverage.................................................................2
Who is an Insured...................................................2
Coverage Extensions
    Supplementary Payments ...............................2
    Out of State.............................................3
Exclusions .............................................................3
Limit of Insurance...................................................5

**SECTION III - PHYSICAL DAMAGE COVERAGE**

Coverage.................................................................7
Exclusions .............................................................7
Limit of Insurance...................................................8
Deductible ..............................................................8

**SECTION IV - BUSINESS AUTO CONDITIONS**

Loss Conditions
    Appraisal for Physical Damage Loss................................9
    Duties in the Event of Accident, Claim, Suit or Loss.........9
    Legal Action Against Us ..........................................9
    Loss Payment - Physical Damage Coverages ...............9
    Transfer of Rights of Recovery Against Others to Us .....10
General Conditions
    Bankruptcy............................................................10
    Concealment, Misrepresentation or Fraud................10
    Liberalization.........................................................10
    No Benefit to Bailee - Physical Damage Coverages .....10
    Other Insurance ...................................................10
    Premium Audit .....................................................10
    Policy Period, Coverage Territory ...........................10
    Two or More Coverage Forms or Policies Issued by Us .....11

**SECTION V - DEFINITIONS** ...............................................11

**COMMON POLICY CONDITIONS**

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

Quote: 2044818    Version: 1    Policy: CPA 0813936    Effective Date: 08/01/2010    Rating State: IL

The Cincinnati Insurance Company
Automobile Schedule - Business Auto
Item Three

Attached to and forming a part of Policy Number CPA 0813936      , effective 08/01/2010

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

**POLICY LIMITS**

Liability:  CSL 1,000,000

UM/UIM:  1,000,000
UMPD:  N/A

Medical Payments:  5,000

1.000/1.000

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2007 GMC YUKON XL    VIN#: 204036    C/N: 64,000   Terr: 134 | | | | | | | | | |
| | Class:  02199    OTC Comp Ded:  500    Coll Ded: 500    ZipCode: 60140    Tax: 005187 | | | | | | | | | |
| | BI | PD | MP | OTC | COLL | UM | | | | TOTAL |
| | 743 | Incl | 36 | 131 | 336 | 52 | | | | 1,298 |
| 2 | 2007 GMC YUKON    VIN#: 249170    C/N: 64,000   Terr: 134 | | | | | | | | | |
| | Class:  7391    OTC Comp Ded:  500    Coll Ded: 500    ZipCode: 60140    Tax: 005187 | | | | | | | | | |
| | BI | PD | MP | OTC | COLL | UM | | | | TOTAL |
| | 502 | Incl | 20 | 139 | 323 | 84 | | | | 1,068 |
| | Business Auto Expanded Coverage (XC) | | | | | | | | | |
| | Class:  9765    Tax:  005187 | | | | | | | | | |
| | BI | PD | MP | OTC | COLL | UM | | | | TOTAL |
| | N/A | N/A | N/A | 100 | N/A | N/A | | | | 100 |
| | Hired and Non Owned    # of Employees: 5 | | | | | | | | | |
| | Class:  6601    Tax:  005187 | | | | | | | | | |
| | BI | PD | MP | OTC | COLL | UM | | | | TOTAL |
| | 32 | Incl | N/A | N/A | N/A | 26 | | | | 58 |
| Total | BI | PD | MP | OTC | COLL | UM | | | | TOTAL |
| | 1,277 | Incl | 56 | 370 | 659 | 162 | | | | 2,524 |

## UNINSURED/UNDERINSURED MOTORISTS
## PROTECTION OPTION SELECTION FORM - ILLINOIS

The laws of Illinois require that automobile liability insurance policies offer Uninsured/Underinsured Motorists Coverage limits equal to the Bodily Injury Limits of the policy to which the coverage attaches. You may, however, select coverage at a lower limit.

**YOU ARE ELECTING TO PURCHASE UNINSURED MOTORISTS LIMITS LESS THAN YOUR BODILY INJURY LIABILITY LIMITS WHEN YOU SIGN THIS FORM.**

Uninsured Motorists Coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles because of bodily injury or death resulting therefrom.

Underinsured Motorists Coverage provides for payment of certain benefits for damages caused by owners or operators of underinsured motor vehicles because of bodily injury or death resulting therefrom.

An Underinsured motor vehicle is a vehicle to which a bodily injury policy or bond applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

Such benefits may include payments for certain medical expenses, lost wages and pain and suffering, subject to limitations and conditions in the policy.

Uninsured/Underinsured Motorist options are available for a modest premium: **PLEASE CONTACT YOUR AGENT** for the exact cost.

### PLEASE SELECT ONE OF THE FOLLOWING:

_____ I select Uninsured/Underinsured Motorists Coverage at the following limits which are lower than the Bodily Injury Liability Limits of my policy.

Thousand Dollars

| | Split Limit | Single Limit |
|---|---|---|
| LIMITS OF LIABILITY | ☐ *20/40 | ☐ 55 |
| | ☐ 25/50 | ☐ 75 |
| | ☐ 50/100 | ☐ 100 |
| | ☐ 100/300 | ☐ 300 |
| | ☐ Other | ☐ Other |

Attached to and forming a part of Policy Number **CPA 081 39 36** and any Renewal or Replacement thereof.

_____
DATE

_____
INSURED'S SIGNATURE

NOTE: **A.** *Underinsured Motorist Coverage does not apply unless Uninsured Motorist Coverage limits exceed the minimum Financial Responsibility Limits of $20,000 each person/$40,000 each occurrence or $55,000 Single Limit Liability.

**B.** Please refer to form CPA-1314 IL for information regarding "Uninsured Motorist Property Damage".

**AP 401 IL (7/95)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNINSURED MOTORISTS COVERAGE

Throughout this Coverage Part "you" and "your" refer to the organizations and natural persons shown as a Named Insured in the Declarations of this Coverage Part. "You" and "your" do not refer to any other persons or organizations, including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named insured in the Declarations of this Coverage Part.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Part apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the Coverage Part unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| **08-01-2010** | **CPA 081 39 36** |
| Named Insured: | |
| **RTW FOX VALLEY LLC, EVENTS OF ELEGANCE, RTW MANAGEMENT INC** | |
| Countersigned by: | |

(Authorized Representative)

### SCHEDULE

| Limit of Insurance | |
|---|---|
| $ | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered "auto" is principally garaged, we will pay only after all liability bonds or policies have been partially or fully exhausted by payment of judgments or settlements.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who is an Insured**

**The following are insureds:**

1. You are an "insured". However, if you are not a natural person, you are an "insured" only for purposes of selecting limits of Uninsured Motorists Coverage or executing a rejection of Uninsured Motorists Coverage.

2. "Family members" of natural persons shown as a Named Insured in the Declarations of this Coverage Part.

3. Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for

**AA 4044 IL 04 01**

Includes copyrighted material of ISO
Properties, Inc., with its permission.

Page 1 of 4

the Named Insured shown in the Declarations of this Coverage Part.

4. Anyone for injuries incurred while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

5. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

C. **Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any personal injury protection, workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Part;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Part; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Part or policy.

4. Any person while operating or occupying a motor vehicle without reasonable belief that he or she is entitled to do so.

5. Punitive or exemplary damages.

D. **Limit of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Uninsured Motorists Insurance shown in the Schedule or the Declarations.

   We will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $20,000 for "bodily injury" to any one person caused by any one "accident", and

   b. $40,000 for "bodily injury" to two or more persons caused by any one "accident".

   This provision will not change our total limit of liability.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Part and any Liability Coverage Part, Medical Payments Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this Coverage Part for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any personal injury protection, workers' compensation, disability benefits or similar law.

E. **Changes in Conditions**

The **Conditions** are changed for Uninsured Motorists Insurance Coverage as follows:

1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary and Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance. We will pay only the amount by which the limit of liability for this Coverage exceeds the limit of liability of such other coverage.

   c. If the coverage under this Coverage Part is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance

providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

a. You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved;

b. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

c. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

3. Transfer of Rights of Recovery Against Others to Us does not apply.

4. The following **Conditions** are added:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**ARBITRATION**

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

2. As to the amount of damages that are recovered;

the matter may be settled by arbitration. If the "insured" requests, we and the "insured" will each select an arbitrator.

The two arbitrators will select a third. If the arbitrators are not selected within 45 days of the insured's request for arbitration, either party may request that

arbitration be submitted to the American Arbitration Association. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

B. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives.

C. If arbitration is submitted to the American Arbitration Association, then the American Arbitration Association rules shall apply to all matters except medical opinions. As to medical opinions, if the amount of damages being sought:

1. Is equal to or less than the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then the American Arbitration Association rules shall apply.

2. Exceeds the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then the rules of evidence that apply in the circuit court for placing medical opinions into evidence shall apply.

In all other arbitration proceedings, local rules of law as to arbitration procedure and evidence will apply.

D. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

2. The amount of damages not exceeding the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law.

F. **Additional Definitions**

As used in this endorsement:

1. "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured in the Declarations of this Coverage Part. Such relation may be by blood, marriage or adoption and may include a ward or foster child.

2. "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor

home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Uninsured motor vehicle" means a "motor vehicle":

   a. For which no liability bond or policy applies at the time of an "accident".

   b. For which an insuring or bonding company denies coverage or is or becomes insolvent.

   c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto" or a vehicle an "insured" is "occupying". If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

However, "uninsured motor vehicle" does not include any "motor vehicle":

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

b. Owned by a governmental unit or agency.

c. Designed for use mainly off public roads while not on public roads.

d. Owned by or furnished or available for the regular use of any "insured", other than the named insured or a "family member" of a named insured.

e. For which liability coverage is afforded under this policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNDERINSURED MOTORISTS COVERAGE

Throughout this Coverage Part "you" and "your" refer to the organizations and natural persons shown as a Named Insured in the Declarations of this Coverage Part. "You" and "your" do not refer to any other persons or organizations, including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named insured in the Declarations of this Coverage Part.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Part apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the Coverage Part unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| **08-01-2010** | **CPA 081 39 36** |

Named Insured:

**RTW FOX VALLEY LLC, EVENTS OF ELEGANCE, RTW MANAGEMENT INC**

Countersigned by:

(Authorized Representative)

## SCHEDULE

| Limit of Liability | |
|---|---|
| $ | Each Accident |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle".

2. We will pay only after all liability bonds or policies have been partially or fully exhausted by judgments or payments, unless:

   a. We have been given prompt written notice of a "tentative settlement" and decide to advance payment to the "insured" in an amount equal to that "tentative settlement" within 30 days after receipt of notification; or

   b. We and an "insured" have reached a "settlement agreement".

3. Any judgment for damages arising out of a "suit" brought without written notice to us is not binding on us.

**B. Who is an Insured**

**The following are insureds:**

1. You are an "insured". However, if you are not a natural person, you are an "insured" only for purposes of selecting limits of Underinsured Motorists Coverage or execut-

ing a rejection of Underinsured Motorists Coverage.

2. "Family members" of natural persons shown as a Named Insured in the Declarations of this Coverage Part.

3. Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for the Named Insured shown in the Declarations of this Coverage Part.

4. Anyone for injuries incurred while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

5. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer under any personal injury protection, workers' compensation, disability benefits or similar law.

3. "Bodily Injury" sustained by:

   a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Part;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Part or policy.

4. Any person while operating or occupying a "motor vehicle" without reasonable belief that he or she is entitled to do so.

5. Punitive or exemplary damages.

## D. Limit of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident",

the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Underinsured Motorists Coverage shown in the Schedule or the Declarations.

2. Except in the event of a "settlement agreement", the Limit of Insurance for this coverage shall be reduced by all sums paid or payable:

   a. By or for anyone who is legally responsible, including all sums paid under this Coverage Part's Liability Coverage.

   b. Under any personal injury protection, workers' compensation, disability benefits or similar law.

   c. Under any automobile medical payments coverage. However, the Limit of Insurance for this coverage shall not be reduced by any sums paid or payable under Social Security disability benefits.

3. In the event of a "settlement agreement", the maximum Limit of Insurance for this coverage shall be the amount by which the limit of insurance for this coverage exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

4. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Part and any Liability Coverage Part.

## E. Changes in Conditions

The **Conditions** are changed for Underinsured Motorists Coverage as follows:

1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary and Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorists insurance. We will pay only the amount by which the

limit of liability for the Coverage exceeds the limit of liability of such other insurance.

c. If the coverage under this Coverage Part is provided:

   (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

   (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   a. Give us written notice of a "tentative settlement" and allow us 30 days to advance payment in an amount equal to that settlement within 30 days after receipt of notification to preserve our rights against the owner or operator of the "underinsured motor vehicle";

   b. File "suit" against the owner or operator of the "underinsured motor vehicle" prior to the conclusion of a "settlement agreement". Such "suit" cannot be abandoned or settled without giving us written notice of a "tentative settlement" and allowing us 30 days to advance payment in an amount equal to that settlement to preserve our rights against the owner or operator of the "underinsured motor vehicle"; .

   c. You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved; and

   d. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought.

   e. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

3. The following is added to **Transfer of Rights of Recovery Against Others to Us:**

   **Transfer of Rights of Recovery Against Others to Us** does not apply to damages caused by an "accident" with an "underinsured motor vehicle" if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s); and

   b. Fail to advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of the notice.

   If we advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of notice:

   a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage, and

   b. We will also have a right to recover the advanced payment.

   However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

4. The following **Conditions** are added:

   **REIMBURSEMENT AND TRUST**

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

   **ARBITRATION**

   a. If we and an "insured" do not agree:

      1. Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

      2. As to the amount of damages that may be recovered;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

The "insured" and we, however, must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court of competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 45 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction.

Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

2. The amount of damages.

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured in the Declarations of this Coverage Part. Such relation may be by blood, marriage or adoption, and may include a ward or foster child.

2. "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not sta-

tionary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Settlement agreement" means we and an "insured" agree that the "insured" is legally entitled to recover, from the owner or operator of the "underinsured motor vehicle", damages for "bodily injury" and, without arbitration, agree also as to the amount of damages. Such agreement is final and binding regardless of any subsequent judgment or settlement reached by the "insured" with the owner or operator of the "underinsured motor vehicle".

5. "Tentative settlement" means an offer from the owner or operator of the "underinsured motor vehicle" to compensate an "insured" for damages incurred because of "bodily injury" sustained in an accident involving an "underinsured motor vehicle".

6. "Underinsured motor vehicle" means a "motor vehicle" for which the sum of the limits of coverage available for payment to the "insured" under all liability bonds or policies covering person(s) or organization(s) liable to the "insured" at the time of an "accident" are less than the Limit of Insurance available for payment to the "insured" under this coverage. However, "underinsured motor vehicle" does not include any vehicle:

a. Owned or operated by any self-insurer under any applicable motor vehicle law.

b. Owned by a governmental unit or agency.

c. Designed for use mainly off public roads while not on public roads.

d. Which is an "uninsured motor vehicle".

e. Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

Throughout this Coverage Form "you" and "your" refer to the organization and any specifically named natural persons shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations. "You" and "Your" do not refer to any other persons or organizations, including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations.

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who is an Insured**

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. "Family members" of natural persons shown as Named Insureds in the Business Auto or Garage Coverage Part Declarations while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone for injuries while "occupying" a covered "auto".

4. Anyone for injuries while "occupying" a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto")

owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while

the "auto" is being prepared for such a contest or activity.

**D. Limit of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes in Conditions**

The Conditions are changed for **Auto Medical Payments Coverage** as follows:

1. The **Transfer of Rights of Recovery Against Others to Us** Condition does not apply.

2. The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance - Primary and Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THE CINCINNATI INSURANCE COMPANY
**AUTOMOBILE CHANGE ENDORSEMENT**

REC'D OCT 2 5 2010

Issued to: RTW FOX VALLEY LLC, EVENTS OF ELEGANCE, RTW MANAGEMENT
INC

Policy No: CPA 0813936                                    Change Effective: 10/05/2010

Agency:    LUNDSTROM INSURANCE      12-141

It is agreed that the policy is amended as follows:

Return Premium Due Now $878 FLAT                **CASH ENDORSEMENT**

Subsequent Quarterly Installments Decreased by

Revised Automobile Installment Payments                                    1.000/1.000

First Installment                    Remaining Installment(s)

The Following item(s) are hereby deleted in their entirety.

| | 2007 GMC YUKON | | | VIN#: 249170 | | C/N:64,000 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | Class: 7391 | | | | | | | | | | |
| | BI | PD | MP | OTC | COLL | UM | | | | | TOTAL |
| | 502 | Incl | 20 | 139 | 323 | 84 | | | | | 1,068 |

Additional Interest(s)

Nothing herein contained shall vary, alter, waive, or extend any of the terms, representations, conditions or agreements of the policy other than as above.

User ID: JBENNET

Activity Date: 10/19/2010      Ratebook:  09/01/2010 (IL)      Quote Number:  2112141      Version:   1

**AA 407 09 09**

THE CINCINNATI INSURANCE COMPANY
**AUTOMOBILE CHANGE ENDORSEMENT**

Endorsement Number:              Policy Number:   CPA 0813936

Change Effective:  10/05/2010                                    Return Premium          $878 FLAT
Policy Expiration Date: 08/01/2011                               Decreased Installment
Pay Plan:  QUARTERLY                                            First Installment
                                                               Remaining Installment(s)

**Policy Limits**

Bodily Injury:      1,000,000                    UM/UIM:    1,000,000
Property Damage:  Incl                           UMPD:      N/A
Medical Payments: 5,000

| | | |
|---|---|---|
| Combined Annual Difference | 1 | -1,068 |
| Installment Premium | 2 | -267 |
| Total Annual Financed Premium | 3 | -1,068 |
| Pro Rate Factor | 4 | 0.822 |
| Return Premium for Balance of Policy Year | 5 | 878 |
| Number of Remaining Installments X #2 | 6 | |
| Cash Return Due Now | 7 | 878 |
| Old Installment Premium | 8 | |
| Decrease each Remaining Installment | 9 | |
| New Installment Premium | 10 | |

User ID:  JBENNET
Activity Date:  10/19/2010        Ratebook:  09/01/2010 (IL)        Quote Number:  2112141        Version:   1

**AA 407 W 09 09**

# THE CINCINNATI INSURANCE COMPANY

REC'D JUL 26 2010

LUNDSTROM INSURANCE
2205 POINT BLVD STE 200
ELGIN IL  60123-7840

12141

Dear Agent:

Our commercial lines team carefully processed this policy endorsement.  However, if you find errors in the endorsement, please indicate the problems and return it via fax to 513-881-8656, or e-mail to CLD_Service@cinfin.com.  We will process the corrections and issue a new endorsement on a priority basis.

Best regards,

The Commercial Lines Department

Policy Number:  CPP 081 39 36/CPA 081 39 36

Effective Date:  08-01-2010

Named Insured: RTW FOX VALLEY LLC, EVENTS OF ELEGANCE, RTW MANAGEMENT INC

# THE CINCINNATI INSURANCE COMPANY

P.O. BOX 145496, CINCINNATI, OHIO 45250-5496

513-870-2000

A STOCK INSURANCE COMPANY

## AUTOMOBILE / GARAGE
## RENEWAL CERTIFICATE

### ATTACH THIS CERTIFICATE TO YOUR POLICY

| POLICY NUMBER | RENEWAL DATE | EXPIRATION DATE |
|---|---|---|
| CPA 081 39 36 | 08-01-2010 | 08-01-2011 |

**NAMED INSURED**
RTW FOX VALLEY LLC, EVENTS OF ELEGANCE,
RTW MANAGEMENT INC
2500 N RIVER ROAD
N AURORA IL  60542

**AGENCY**
LUNDSTROM INSURANCE 12-141
  ELGIN IL

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY UNLESS OTHERWISE SPECIFIED, THE ABOVE NUMBERED POLICY IS RENEWED FOR THE TERM SHOWN ABOVE.

### COVERAGE PROVIDED

| AUTOMOBILE - SEE SCHEDULE | PREMIUM |
|---|---|
| | $ REFER TO IA102 |

**FORMS APPLICABLE AT RENEWAL**

| IA102 | 09/08 | AA501 | 03/06 | IA501 | 05/06 |
|---|---|---|---|---|---|

TAX ID# 005187

NB1 BSO
07-20-2010

Countersigned _____   By _____
              (Date)                           (Authorized Representative)

**ORIGINAL**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.