UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT WEHRLE and HEIKE WEHRLE, | ) | |
| | ) | |
| Plaintiffs, | ) | 12 C 331 |
| vs. | ) | |
| | ) | Judge Feinerman |
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Plaintiffs Robert and Heike Wehrle, a married couple, were in a car accident caused by a drunk driver. Doc. 14-2 at ¶¶ 1, 5. Robert's injury claim exceeded $750,000 and Heike's exceeded $1,500,000. *Id*. at ¶ 9. The drunk driver's GEICO insurance policy had per person liability limits of $100,000. *Id*. at ¶¶ 6-7. With the consent of Defendant Cincinnati Insurance Company, the Wehrles' insurer at the time of the accident, Robert and Heike each accepted $100,000 from GEICO. *Id*. at ¶¶ 7-8, 10, 12. The Wehrles' Cincinnati policy had $1,000,000 in underinsured motorist coverage for situations like this one, where the at-fault driver's liability coverage does not cover the injuries sustained by Cincinnati's insureds. *Id*. at ¶ 11; Doc. 1-1 at 9, 34-37. Cincinnati paid $800,000 to the Wehrles, which it calculated by offsetting the $1,000,000 policy limit by the $200,000 they received from GEICO. Doc. 14-2 at ¶ 16.

The Wehrles filed this lawsuit against Cincinnati to recover the $200,000 that it offset from the $1,000,000 policy limit. Cincinnati believes that the offset is proper under its policy and Illinois law. The Wehrles disagree; they say that the $100,000 they each received from GEICO should be applied not to the $1,000,000 policy limit, but rather to their individual claims,

so that Robert should be deemed to have a $650,000 claim and Heike a $1,400,000 claim. The parties filed cross-motions for summary judgment on a set of stipulated facts. Docs. 13, 14, 14-2. Cincinnati's motion is granted, and the Wehrles' motion is denied.

The parties agree that Illinois law governs. The Seventh Circuit summarized Illinois law pertaining to the interpretation of insurance policies as follows:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted). Although ambiguities are construed in the insured's favor, "a court will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006); *see also Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir. 2006). "[I]n construing a policy, governing legal authority must … be taken into account as well, for a policy term may be considered unambiguous where it has acquired an established legal meaning." *Ace Am. Ins. Co. v. RC2 Corp.*, 600 F.3d 763, 766 (7th Cir. 2010) (internal quotation marks omitted).

The Cincinnati policy's underinsured motorist provision is unambiguous. It states: "We will pay all sums the insured is legally entitled to recover as compensatory damages from the owner or operator of an underinsured motor vehicle." Doc. 14-2 at ¶ 13. It further states: "Regardless of the number of covered 'autos,' 'insureds,' premiums paid, claims made or

vehicles involved in the 'accident,' the most [Cincinnati] will pay for all damages resulting from any one 'accident' is the Limit of Insurance for Underinsured Motorists Coverage shown in the Schedule or Declarations." *Id*. at ¶ 14. It then states: "The Limit of Insurance for this coverage [$1,000,000] shall be reduced by all sums paid or payable… [b]y or for anyone who is legally responsible." *Id*. at ¶ 15. The drunk driver was underinsured. There was one accident, so the $1,000,000 policy limit applies. And GEICO paid the Wehrles $200,000 on behalf of the drunk driver. Cincinnati therefore was entitled to offset the $1,000,000 policy limit by $200,000. Having already tendered $800,000 to the Wehrles, Cincinnati owes them nothing more. The Wehrles' position—that the GEICO payment should offset their individual claims and not the policy limit—cannot be reconciled with the underinsured motorist provision's plain terms.

Illinois law holds that insurance policies in general, and underinsured coverage provisions in particular, must not contravene public policy as expressed in the Illinois Insurance Code. *See Ill. Farmers Ins. Co. v. Cisco*, 687 N.E.2d 807, 810 (Ill. 1997); *Severs v. Country Mut. Ins. Co.*, 434 N.E.2d 290, 292 (Ill. 1982). The Cincinnati policy fully comports with the Illinois underinsured motorist statute. Like the policy, the statute provides that "[t]he limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, *less those amounts actually recovered under the applicable bodily injury insurance policies … on the underinsured motor vehicle*." 215 ILCS 5/143a-2(4) (emphasis added). As the Supreme Court of Illinois explained in *Sulser v. Country Mutual Insurance Co.*, 591 N.E.2d 427 (Ill. 1992), the purpose of underinsured coverage is "to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance"; such coverage is "designed to offer insurance to 'fill the gap' between the claim and the tortfeasor's insurance,"

and thus is "obviously not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy." *Id*. at 429, 430.

Accordingly:

> Under a $100,000 policy, the policyholder is assured of compensation for his injuries in the amount of $100,000. However, the policyholder is not necessarily assured of receiving the total $100,000 from the insurer, but only of receiving that portion of the $100,000 which is not recovered from third parties. … For example, if the policyholder received $100,000 in a settlement with the uninsured tortfeasor, the insurance company would have no obligation to make payment to the insured policyholder. Similarly, if the insured policyholder received workers' compensation benefits of $100,000, the insurance company's obligation under the policy would be reduced to zero.

*Id*. at 430. Thus, "[w]hen the insured opts for $100,000 in coverage against … underinsured motorist risks, he is assured of receiving no more than that amount." *Ibid*. The Wehrles received the $1,000,000 they contracted for and to which the statute entitles them—$200,000 from GEICO and $800,000 from Cincinnati. They have no basis in law or logic to demand an extra $200,000 from Cincinnati.

This result accords with *Erie Insurance Exchange v. Triana*, 923 N.E.2d 861 (Ill. App. 2010), a case presenting materially identical circumstances. Triana and Wagner were injured in a car accident caused by an underinsured driver. *Id*. at 862. The underinsured driver's insurer paid $100,000 each to Triana and Wagner. *Ibid*. Triana and Wagner were insureds under an Erie Insurance Exchange policy providing $300,000 in underinsured motorist coverage per accident. *Ibid*. The terms were nearly identical to those in the Wehrles' Cincinnati policy, including the offset provision, which in the Erie policy stated that the underinsured motorist policy limit "will be reduced by … the amounts paid by or for those liable for bodily injury to *anyone we protect*." *Id*. at 865. The Appellate Court of Illinois held that Erie owed Triana and

Wagner (together) only $100,000, which it calculated by subtracting the $200,000 they received

from the other driver's insurer from the Erie policy's $300,000 policy limit:

> The Erie policy clearly and unambiguously states that … the per-accident
> limit is the most that will be applied to all persons involved in any one
> accident, regardless of the number of people involved.  Here, two persons
> were injured in the accident, Triana and Wagner.  Therefore, the $300,000
> per-accident policy limit applies, and that amount is the most that Erie
> contracted to pay for injuries arising from any one accident.  Additionally,
> the Erie policy clearly and unambiguously provides that the policy limits
> would be reduced by the amounts paid on behalf of the tortfeasor.  In this
> case, $200,000 has already been paid to the injured parties, Triana and
> Wagner, by State Farm on behalf of the other driver.  Thus, only $100,000
> of the $300,000 per-accident policy limit remains for Triana and Wagner to
> recover under the Erie policy.  Accordingly, we find that the trial court did
> not err in concluding that the setoff provisions of the Erie policy were
> unambiguous and in granting summary judgment in favor of Erie.

*Id*. at 865-66; *see also Obenland v. Econ. Fire & Cas. Co.*, 599 N.E.2d 999 (Ill. App. 1992)

(reaching the same result on essentially the same facts).  Likewise, Cincinnati is entitled to offset

its $1,000,000 underinsured motorist policy limit by the $200,000 that the Wehrles received

from the drunk driver's insurer.

   The Wehrles attempt to distinguish *Triana* on the ground that the Erie policy's offset

provision stated that the per accident limit "will be reduced by … the amounts paid by or for

those liable for bodily injury to *anyone we protect*," *Triana*, 923 N.E.2d at 865, while the

Cincinnati policy's offset provision states that the per accident limit "shall be reduced by all

sums paid or payable… [b]y or for anyone who is legally responsible," Doc. 40-1 at ¶ 15.  The

argument is beside the point; even if *Triana* did not exist, this court would have interpreted the

Cincinnati policy in precisely the same way.  The distinction between the two policies is illusory

in any event.  The Wehrles submit that the phrase "to anyone we protect" in the Erie policy

expressly permits the insurer to offset the per accident policy limit by amounts received from

other sources by more than one insured, and not simply by a single insured. But the Cincinnati policy does so as well; the words "all sums" in the phrase "all sums paid or payable… [b]y or for anyone who is legally responsible" likewise can connote amounts received from other sources either by one insured or by more than one insured.

Because the Supreme Court of Illinois has not directly addressed the precise coverage dispute presented in *Triana* and here, this court may deviate from *Triana*, an intermediate appellate court case, only if "there are persuasive indications that the [state supreme court] would decide the [issue] differently." *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 509 (7th Cir. 2003) (quoting *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002)). There are no such persuasive indications; to the contrary, *Cummins v. Country Mutual Insurance Co.*, 687 N.E.2d 1021 (Ill. 1997), strongly suggests that the Supreme Court of Illinois would agree with *Triana*. The question presented in *Cummins* was whether an at-fault driver is "underinsured" within the meaning of Illinois law when his liability policy limit is the same as the injured party's underinsured motorist policy limit. *Id.* at 1022. The state supreme court answered that question in the affirmative—an answer that has no bearing on this case, and that interpreted a statutory provision that was since amended. *See Mercury Indem. Co. of Ill. v. Kim*, 830 N.E.2d 603, 613-14 (Ill. App. 2005). Relevant to this case, the court proceeded to consider how much, if anything, Cummins (the injured party) was owed by Country Mutual (his insurer). Cummins had $50,000 in per person underinsured motorist coverage. *Id.* at 1023. The at-fault driver's insurer paid $35,000 to Cummins. *Ibid.* Relying on *Sulser*, the state supreme court recognized that Cummins was entitled to $15,000 from Country Mutual, calculating that amount by offsetting his $50,000 policy limit by the $35,000 that he had received from the at-

fault driver's insurer. *Id.* at 1027 ("Under *Sulser*, [Cummins] needs $15,000 to 'fill the gap' between his underinsured coverage limits and the amount of liability insurance actually recovered [from the at-fault driver's insurer].").  Cincinnati effected an analogous offset in this case.

Finally, the Wehrles argue that this result is absurd because Cincinnati "pay[s] out less when two insured are catastrophically injured than it would pay out if only one insured is injured." Doc. 13-1 at 2.  There is nothing absurd about this result.  Suppose only Heike had been injured.  She would have received $100,000 from GEICO, the drunk driver's insurer, and Cincinnati then would have paid her $900,000, applying a $100,000 offset to the $1,000,000 policy limit.  Here, of course, both Heike and Robert were injured, so Cincinnati paid only $800,000 because the drunk driver's insurer paid $100,000 each to Robert and Heike.  That is exactly how underinsured motorist coverage is supposed to work.  Its sole purpose is to "fill the gap" between the at-fault driver's liability policy limits (here, $200,000) and the injured parties' underinsured motorist coverage (here, $1,000,000 per accident).  *Sulser*, 591 N.E.2d at 430.  That purpose was fully realized by Cincinnati's $800,000 payment to the Wehrles.

For the foregoing reasons, Cincinnati's summary judgment motion is granted and the Wehrles' summary judgment motion is denied.

August 21, 2012

_____
United States District Judge